RAB:DDB
F.#2011R02302

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y
★ OCT 28 2011 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

- against -

ROBERT FINKELSHTEYN,

        Defendant.

- - - - - - - - - - - - - - - -X

INDICTMENT

CR 11     737

(T. 18, U.S.C., §§ 982
982(a)(7), 1349, 1956(h)
and 3551 et seq.)

JOHNSON
LEVY, M.J.

THE GRAND JURY CHARGES:

### INTRODUCTION

At all times relevant to this Indictment, unless otherwise indicated:

#### The Defendant and the Participants in the Fraudulent Scheme

1. From approximately January 2006 to June 2010, the defendant ROBERT FINKELSHTEYN, together with others, agreed to execute and executed a scheme to defraud no-fault insurance plans, the identities of which are known to the Grand Jury (the "No-Fault Insurance Plans"), by establishing and operating several companies that purported to be retailers of medical supplies (the "Retail Companies") that provided durable medical equipment ("DME") to individuals who were eligible for no-fault insurance benefits.

#### New York State No-Fault Insurance Law

2. Under the New York State no-fault insurance law, an insurance company that insured a vehicle involved in an accident was required to provide reimbursement of up to $50,000 per vehicle

occupant for the occupant's "basic economic loss." Basic economic loss included the costs of certain medical treatments and services, on condition that these treatments and services were necessary and actually provided. Reimbursement payments were made without regard to the fault of either driver, and were commonly referred to as "no-fault" coverage.

3. Under New York State law, vehicle occupants could assign their right to reimbursement from an insurance company to others, including, but not limited to, medical facilities and DME supply companies that performed treatment and/or provided DME for their injuries. Where such an assignment was made, the medical facility or DME supply company, or its agent, billed the insurance company directly for services rendered and received payment directly from the insurance company.

5. New York State law also allowed vehicle occupants to file personal injury claims and lawsuits, in order to obtain damages over $50,000, if the occupant sustained "serious bodily injury," as defined by statute, as a result of the accident.

6. The No Fault Insurance Plans were health care benefit programs within the meaning of Title 18, United States Code, Sections 1035 and 1347.

The Health Care Fraud Scheme

7. As a part of the fraudulent scheme, the defendant ROBERT FINKELSHTEYN, together with others, knowingly and intentionally caused the Retail Companies to submit fraudulent

claims for reimbursable medical expenses to the No-Fault Insurance Plans. Such claims sought reimbursement either for DME at fraudulently inflated prices, well in excess of those actually paid by the Retail Companies, or for DME that was never even provided to the Retail Companies. These claims were supported by fraudulent DME invoices created by other participants in the scheme, whose identities are known to the Grand Jury (the "Wholesale Co-conspirators"), who had established wholesale DME companies for the purpose of generating fraudulent invoices (the "Wholesale Companies").

8. On numerous occasions, the fraudulent invoices provided by the Wholesale Co-conspirators falsely inflated the prices for DME in amounts that were approximately five to fifteen times the actual prices of the DME. Additionally, the descriptions for the DME listed on the fraudulent invoices falsely claimed that the DME was of higher quality, and thus far more expensive, than the DME actually purchased.

9. On other occasions, the Wholesale Co-conspirators provided fraudulent invoices to the Retail Companies falsely representing that DME was purchased, when in fact, no DME had actually been purchased.

10. The No Fault Insurance Plans provided reimbursements to the Retail Companies based on many of the false claims, supported by the fraudulent invoices.

### The Money Laundering Scheme

11.    It was also a part of the fraudulent scheme that the defendant ROBERT FINKELSHTEYN, together with others, established corporate bank accounts under the names of the Retail Companies. The Retail Companies used these accounts to issue checks to the Wholesale Companies based on the fraudulent DME invoices. Upon receipt of the checks from the Retail Companies, the Wholesale Co-conspirators converted them into cash at check-cashing establishments. After retaining a portion of the proceeds, the Wholesale Co-conspirators delivered the remaining portion of the proceeds to the Retail Companies. To further the fraudulent scheme, the Retail Companies then used some of the proceeds to pay kickbacks to medical clinics for DME prescriptions needed to submit additional fraudulent claims to the No-Fault Insurance Plans.

### COUNT ONE
(Health Care Fraud Conspiracy)

12.    The allegations contained in paragraphs one through eleven are realleged and incorporated as if fully set forth in this paragraph.

13.    In or about and between January 2006 and June 2010, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant ROBERT FINKELSHTEYN, together with others, did knowingly and intentionally conspire to execute a scheme and artifice to defraud health care benefit programs, to wit: the No-Fault Insurance Plans, and to

obtain, by means of materially false and fraudulent pretenses, representations and promises, money and property owned by, and under the custody and control of, said health care benefit programs, in connection with the delivery of and payment for health care benefits, items and services, contrary to Title 18, United States Code, Section 1347.

(Title 18, United States Code, Sections 1349 and 3551 et seq.)

### COUNT TWO
(Money Laundering Conspiracy)

14. The allegations contained in paragraphs one through eleven are realleged and incorporated as if fully set forth in this paragraph.

15. In or about and between January 2006 and June 2010, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant ROBERT FINKELSHTEYN, together with others, did knowingly and intentionally conspire to conduct financial transactions affecting interstate commerce, to wit: the deposit, transfer and delivery of checks and United States currency, which transactions in fact involved the proceeds of specified unlawful activity, to wit: health care fraud, in violation of Title 18, United States Code, Sections 1347 and 1349, knowing that the property involved in the transactions represented the proceeds of some form of unlawful activity, (a) with the intent to promote the carrying on of the specified

unlawful activity, and (b) knowing that the transactions were designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership and the control of the proceeds of the specified unlawful activity, contrary to Title 18, United States Code, Sections 1956(a)(1)(A)(i) and 1956(a)(1)(B)(i).

(Title 18, United States Code, Sections 1956(h) and 3551 et seq.)

### CRIMINAL FORFEITURE ALLEGATION AS TO COUNT ONE

16. The United States hereby gives notice to the defendant ROBERT FINKELSHTEYN, that upon his conviction of the offense charged in Count One, the government will seek forfeiture in accordance with Title 18, United States Code, Sections 982(a)(7), which requires any person convicted of such offense to forfeit property, real and personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense.

17. If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

(a) cannot be located upon the exercise of due diligence;

(b) has been transferred or sold to, or deposited with, a third party;

(c) has been placed beyond the jurisdiction of the court;

(d) has been substantially diminished in value; or

(e) has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 18, United States Code, Section 982, to seek forfeiture of any other property of the defendant up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Section 982(a)(7))

### CRIMINAL FORFEITURE ALLEGATION AS TO COUNT TWO

18. The United States hereby gives notice to the defendant ROBERT FINKELSHTEYN, that upon conviction of the offense charged in Count Two, the government will seek forfeiture in accordance with Title 18, United States Code, Section 982 of all property involved in the offense in violation of Title 18, United States Code, Section 1956, or conspiracy to commit such offense, and all property traceable to such property.

19. If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

(a) cannot be located upon the exercise of due diligence;

(b) has been transferred or sold to, or deposited with, a third party;

(c) has been placed beyond the jurisdiction of the court;

(d) has been substantially diminished in value; or

(e) has been commingled with other property which

cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 18, United States Code, Section 982, to seek forfeiture of any other property of the defendant up to the value of the forfeitable property described in this forfeiture allegation.

        (Title 18, United States Code, Section 982)

A TRUE BILL

_____
FOREPERSON

LORETTA E. LYNCH
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

FORM DBD.34
JUN.85

No. _____

# UNITED STATES DISTRICT COURT

EASTERN District of NEW YORK

THE UNITED STATES OF AMERICA

vs.

ROBERT FINKELSHTEYN

Defendant.

# INDICTMENT

(T. 18, U.S.C., §§ 982, 982(A)(7), 1349, 1956(h), 1956(a)(1)(A)(i), 1956(a)(1)(B)(i) and 3551 et seq.)

A true bill

_____
Foreman

Filed in open court this _____ day.
Of _____ A.D. 2011.

_____
Clerk

Bail, $ _____

Daniel Brownell, AUSA    (718) 254-6392